IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

CHARVEZ BROOKS,
*Defendant.*

Criminal No. ELH-20-0034

## MEMORANDUM OPINION

Defendant Charvez Brooks was indicted on January 28, 2020, and charged with one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g).  ECF 1.  This Memorandum Opinion addresses the "Motion to Dismiss Indictment for Speedy Trial Violation" (ECF 50, the "Motion"), filed by Brooks on December 8, 2023.  Without question, the case has been pending for a considerable time.  But, there has been a "long and winding road"[1] that accounts for the unfortunate delay.

About six weeks after defendant's indictment in the firearm case, the COVID-19[2] pandemic caused a severe interruption to judicial operations.  It lasted, in some form, until approximately February of 2022.  *See In re Standing Orders*, 1:00-mc-0308, ECF 93; ECF 145. Moreover, when defendant was indicted in this case, he was already under indictment in this District in a separate case, charging him with Hobbs Act robbery and conspiracy to commit Hobbs Act robbery.  *See United States v. Elder et al.*, JKB-18-0408.  I shall refer to case JKB-18-0408 as

---

[1] "The Long and Winding Road" was written by Paul McCartney in 1968 and released by The Beatles in 1970.  *See The Long and Winding Road*, WIKIPEDIA, https://perma.cc/XDP6-89ST.

[2] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://perma.cc/24J3-UQZN.

the "Hobbs Act case" and I shall refer to the instant case, ELH-20-0034, as the "felon-in-possession" case or the "firearm case."

In August 2020, while the firearm case was pending, the Hobbs Act case proceeded to a jury trial.[3]  On August 31, 2020, defendant was convicted of Hobbs Act conspiracy.  *See* JKB-18-0468, ECF 136.  Sentencing was initially scheduled for December 15, 2020.  *Id.*, ECF 137.  But, for various reasons, including a change in defense counsel (*id.*, ECF 161, ECF 163), sentencing was not held until October 15, 2021.  *Id.*, ECF 167, ECF 184.  On that date, Chief Judge Bredar sentenced defendant to 124 months of incarceration.  *Id.*, ECF 186.[4]

Brooks noted an appeal to the Fourth Circuit on October 22, 2021.  *Id.*, ECF 189.  The Fourth Circuit affirmed the conviction on January 3, 2023.  *Id.*, ECF 224.  The mandate followed on January 25, 2023.  *Id.*, ECF 226.  Thereafter, on February 21, 2023, the Supreme Court denied certiorari.  *Id.*, ECF 227.

The pendency of the Hobbs Act case, including the appeal in that case, as well as the COVID-19 pandemic and defendant's plea negotiations, all led to the delay in the firearm case—the entirety of which occurred with defendant's consent or at his request.  Over the four-year life of the firearm case, on at least nine occasions, defendant and the government jointly asked the

---

[3] The Hobbs Act case, with three defendants, was originally assigned to me as case ELH-18-0408.  However, on June 30, 2020, after two of the defendants had already pleaded guilty, Brooks's case was transferred to Chief Judge Bredar for trial.  *See* Docket.  At the time, despite the pandemic, the District Court was attempting to resume jury trials, utilizing a variety of safety protocols.

To my knowledge, defendant's Hobbs Act case was the first jury trial that the District Court conducted after the pandemic began.  The Court's effort to resume jury trials was short-lived, however, because of the continued virulence of the virus, discussed *infra*.

[4] Defendant's Guidelines called for a sentence ranging between 120 and 150 months of incarceration.  *See United States v. Elder et al.*, JKB-18-0408, ECF 187.

Court to grant a continuance.  *See* ECF 18; ECF 20; ECF 25; ECF 27; ECF 32; ECF 34; ECF 36; ECF 39; ECF 41.  As bases for their requests, the parties cited, *inter alia*, their desire to delay proceeding in the firearm case until defendant's Hobbs Act case was resolved, including as to the appeal; the public health crisis caused by the COVID-19 pandemic; and their ongoing engagement in plea discussions.  *See id.*  The Court granted each request.  *See* ECF 19; ECF 21; ECF 26; ECF 28; ECF 33; ECF 35; ECF 37; ECF 40; ECF 42.

The matter of plea negotiations was not specious.  By email on September 21, 2023, the government informed the Court that the parties had reached a plea agreement in the firearm case.  And, defendant appeared before the Court for a guilty plea proceeding on October 6, 2023.  ECF 48.  However, at that proceeding, defendant decided not to enter a plea of guilty.  *See* ECF 48; ECF 57 (Transcript, October 6, 2023).  And, for the first time, defendant requested a trial in this case.  The defense also requested an opportunity to file motions.  ECF 57 at 6.  Thereafter, the Court entered a Scheduling Order, which set a pretrial motions deadline of December 8, 2023; a motions hearing date; and a trial date of April 15, 2024.  ECF 49; *see also* ECF 73.

On December 8, 2023, defendant filed several motions, including his speedy trial Motion.  ECF 50.[5]  Notably, this was the first time that defendant ever requested a "speedy trial."  In the Motion, defendant argues that the Indictment must be dismissed because his statutory and constitutional speedy trial rights have been violated.  The government opposes the Motion.  ECF 72 ("Opposition").  Defendant did not reply.

The Court held a hearing on this Motion on March 8, 2024, at which argument was presented.  During the hearing, the Court observed that the government had not argued in the

---

[5] In his other motions, defendant moved to suppress the recovery of the firearm and his custodial statements.  ECF 52; ECF 53.  He also sought dismissal of the Indictment on the ground that 18 U.S.C. § 922(g) is unconstitutional under the Second Amendment.  ECF 51.

Opposition that defendant was estopped from claiming a speedy trial violation because he joined in the requests that led to the delay, thereby foreclosing his right to complain.

Thereafter, on March 18, 2024, the government filed a "Supplemental Response to Defendant's Motion to Dismiss Indictment for Speedy Trial Violation." ECF 91 ("Supplemental Response"). In the Supplemental Response, the government argues that defendant "should be estopped from arguing that his rights under the Speedy Trial Act have been violated." *Id.* at 1.[6] On March 19, 2024, defendant filed a "Reply to Government Supplemental Response to Defendant's Motion to Dismiss Indictment for Speedy Trial Violation." ECF 92 ("Reply to Supplemental Response").

For the reasons that follow, I shall deny the Motion.

## I.   Factual and Procedural Background

The procedural history of the felon-in-possession case, ELH-20-0034, cannot be viewed in a vacuum. Instead, it must be considered in relation to the Hobbs Act case, JKB-18-0408. And, neither of these cases can be considered without recalling the challenges to Court operations caused by the COVID-19 pandemic, beginning in March 2020 and continuing for almost two years.

### A.

In case JKB-18-0408, defendant and two others were charged with conspiracy to commit Hobbs Act robbery (Count One) and Hobbs Act robbery (Count Two). *See United States v. Elder et al.*, JKB-18-0408, ECF 1; ECF 30. Brooks was named in the Superseding Indictment issued on August 14, 2019. *Id.*, ECF 30. He was arraigned on September 12, 2019 (*id.*, ECF 46) and detained. *Id.*, ECF 48.

---

[6] The government does not appear to argue estoppel as to the alleged constitutional violation.

The Hobbs Act case was initially assigned to me, as case ELH-18-0408.  By Order of October 4, 2019, I scheduled trial for January 13, 2020.  *Id.*, ECF 50.  But, shortly before trial, the Court was informed that defendant intended to plead guilty.  Therefore, by Order of January 8, 2020 (*id.*, ECF 63), a rearraignment for defendant was set for January 10, 2020.  However, at the Rule 11 hearing, defendant decided not to proceed with his guilty plea.  *Id.*, ECF 67.  On the same date, Magistrate Judge Thomas DiGirolamo conducted an attorney inquiry hearing. *Id.*, ECF 68. New counsel was appointed for Brooks on January 15, 2020.  *Id.*, ECF 73, ECF 75.  And, after a telephone conference with counsel, I issued an Order scheduling trial for May 18, 2020.  *Id.*, ECF 74.[7]  However, as discussed *infra*, the Court could not try the case in May 2020, due to the COVID-19 pandemic.  *See In re Standing Orders*, 1:00-mc-0308, ECF 99.

On June 30, 2020, the Hobbs Act case was reassigned to Chief Judge Bredar.  *See* Docket. At that time, the District Court was hopeful that it would soon be able to resume jury trials, despite the COVID-19 pandemic.  As discussed, *infra*, to my recollection, the Hobbs Act case was the first jury trial conducted after the suspension was lifted.  And, Chief Judge Bredar decided to try defendant's Hobbs Act case because, in his capacity as Chief Judge, he wanted to oversee the District's effort to resume and safely manage jury trials during the pandemic.  The Hobbs Act trial was held in late August of 2020. *See id.*, Docket.  As noted, defendant was convicted of Hobbs Act conspiracy on August 31, 2020.  *Id.*, ECF 136.

In the meantime, on January 28, 2020, while the Hobbs Act case was pending, a grand jury in the District of Maryland issued an Indictment in ELH-20-0034, charging defendant with one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g).  ECF 1.  Joseph Murtha, Esq., who was then defense counsel in the Hobbs Act case, was appointed to

---

[7] Of course, new counsel needed time to familiarize himself with the case.

represent defendant in the felon-in-possession case. ECF 4. Mr. Murtha entered his appearance on March 6, 2020. ECF 7.[8] Also on March 6, 2020, defendant had his initial appearance and arraignment (ECF 8; ECF 9) and he pleaded not guilty. ECF 9. At the time, defendant was already detained in the Hobbs Act case, and the court entered an "Order of Detention by Agreement." ECF 10.

I entered a Scheduling Order in the felon-in-possession case on March 9, 2020. ECF 11. It provided for the filing of defense motions by March 27, 2020, and a telephone conference on April 1, 2020. *Id.* No defense motions were filed by that date, with the exception of a request for a detention hearing. Indeed, no motions were ever filed until December 8, 2023.

As indicated, the defendant sought a detention hearing in the firearm case, by way of a filing on March 13, 2020. ECF 12. The hearing was conducted by Magistrate Judge A. David Copperthite on March 27, 2020. ECF 14. Judge Copperthite continued defendant's detention. ECF 15.

Notwithstanding the COVID-19 pandemic, discussed *infra*, "[i]n an effort to maintain the progress of this case," I asked the parties on April 6, 2020, to submit a status report, due by April 21, 2020. ECF 16. In response to the Court's request, the government submitted a status report on April 21, 2020. ECF 17. In the status report, the government stated, in part, *id.*:

> On January 28, 2020, the defendant was charged in the instant indictment with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g). In addition to this indictment, the defendant is charged with Conspiracy to Commit Hobbs Act Robbery and related charges in US v. Jesse Elder et al, ELH-18-0408 which is also pending before this Court.
>
> On the January 10, 2020 [sic], the Friday before trial was to begin in ELH-18-0408, the defendant's case was adjourned. New counsel was appointed and the

---

[8] Mr. Murtha was replaced by current counsel in both cases on March 25, 2021. *See* JKB-18-0408, ECF 161, ECF 163; ELH-20-0034, ECF 22, ECF 24.

trial was rescheduled for May 18, 2020. Due to the COVID-19 pandemic and the Court's most recent standing order, that date must be rescheduled.

The parties respectfully request that the robbery case, ELH-18-0408, proceed to trial before the instant case is scheduled. Therefore, the parties request that when normal Court operations resume, a telephone conference be held in order to reschedule the trial date in ELH-18-0408 and that a status report on this case be provided at that time.

Thereafter, on April 24, 2020, I held a telephone status conference with counsel. *See* Docket. As requested by the parties in ECF 17, I agreed to defer issuance of a scheduling order until defendant's Hobbs Act case was resolved.

On August 3, 2020, with defendant's consent, the government filed a "Consent Motion to Exclude Time Pursuant to the Speedy Trial Act." ECF 18 ("First Consent Motion to Exclude" or "First Consent Motion"). In the First Consent Motion, the government asked the Court to exclude "time up to January 2, 2021 . . . under the ends-of-justice provision, 18 U.S.C. § 3161(h)(7)(A)." *Id.* ¶ 6.

The government offered three grounds for the exclusion. *See id.* ¶¶ 6, 7. First, the government asserted that "a failure to continue would likely make . . . completion [of the trial] impossible due to public-health risks and concerns." *Id.* Second, the government asserted that "denial of a continuance is likely to deny all counsel reasonable time necessary for effective preparation, taking into account the exercise of due diligence." *Id.* ¶ 7 (citing 18 U.S.C. § 3161(h)(7)(B)(iv)). Third, the government claimed that the delay was automatically excludable under 18 U.S.C. § 3161(h)(1)(B), because it was a "delay resulting from trial with respect to other charges against the defendant." ECF 18, ¶ 8.

By Order of August 3, 2020 (ECF 19), I granted the First Consent Motion to Exclude. The Order stated, in part, *id.* at 1–2:

The Court finds that the ends of justice served by granting the requested continuance in this matter outweigh the best interest of the public and the defendant in a speedy trial, inasmuch as . . . [1] the failure to grant this request would be likely to result in a miscarriage of justice; . . . [2] given the grave public-health concerns discussed in this Court's standing orders . . . the ends of justice served by the continuance outweigh the best interest of the public and Defendant in a speedy trial; . . . and [3] the failure to set trial beyond the speedy trial date in this proceeding would deny counsel for the defendant and the attorneys for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

In addition, the Order provided that "the delay" resulted from "trial with respect to other charges against the defendant." *Id.* at 2. And, it stated that "the continuance is not based on congestion of the Court's calendar, lack of diligent preparation on the part of counsel for the Government or the Defendant, or failure on the part of the Government to obtain available witnesses." *Id.*

On February 2, 2021, the government filed a second "Consent Motion to Exclude Time Pursuant to the Speedy Trial Act," asking the Court to "exclude the time up to and including April 23, 2021." ECF 20 ("Second Consent Motion to Exclude" or "Second Consent Motion"). By Order of February 2, 2021 (ECF 21), I granted the Second Consent Motion. The grounds for exclusion were the same as those identified in the Order of August 3, 2020. *See* ECF 19; ECF 21.

Then-Magistrate Judge Deborah Boardman held an attorney inquiry hearing on March 15, 2021, and relieved Mr. Murtha of his appointment as defendant's counsel. ECF 22. Joseph Balter, defendant's current lawyer, was appointed as counsel for defendant in the firearm case. ECF 24.[9]

The government filed a third "Consent Motion to Exclude Time Pursuant to the Speedy Trial Act" on June 14, 2021. ECF 25 ("Third Consent Motion" or "Third Consent Motion to

---

[9] The attorney inquiry hearing was simultaneously held in the Hobbs Act case. *See* JKB-18-0408, ECF 161, ECF 162. Mr. Murtha was also replaced by Mr. Balter in the Hobbs Act case, for the purpose of sentencing. ECF 163.

Exclude"). It asked the Court to exclude the time period from April 23, 2021 through October 15, 2021. *Id.* The government stated that "the continuation of the trial date is necessary due to the public-health risks and concerns." *Id.* ¶ 7. And, the government wrote, *id.* ¶ 8 (quoting 18 U.S.C. § 3161(h)(1)(B)):

> [T]he Defendant was convicted of conspiracy to commit Hobbs Act Robbery in August 2020, Case No. JKB-18-408. Sentencing in that case is currently scheduled for October 15, 2021. Because this trial constitutes "delay resulting from trial with respect to other charges against the defendant," the time is excludable.

By Order of June 14, 2021 (ECF 26), I granted the Third Consent Motion to Exclude. In particular, I "incorporated" the "reasons set forth . . . in the Government's motion [ECF 25]," and I ordered "that any delay in the trial of this case between April 23, 2021 through October 15, 2021 shall be excluded pursuant to 18 U.S.C. §§ 3161(h)(1)(B), (h)(1)(D), and (h)(7)(A)." ECF 26. Further, "for the reasons stated" in the Third Consent Motion (ECF 25), which I "incorporated" in my Order, I found that "any delay resulting from the continuance of the imposition of dates for the filing of pretrial motions, the motions hearing, and the trial in this case is in the interest of justice and outweighs the interests of the public and the Defendant in a speedy trial." *Id.*

The government filed a fourth "Consent Motion to Exclude Time Pursuant to the Speedy Trial Act" on January 6, 2022. ECF 27 ("Fourth Consent Motion to Exclude" or "Fourth Consent Motion"). In the Fourth Consent Motion, the government "request[ed] that th[e] Court exclude the time period from October 15, 2021 through January 31, 2022." *Id.* at 1. As grounds for the exclusion, the government asserted that "continuation of the trial date is necessary due to public-health risks and concerns, especially in light of the surging numbers of recent COVID-19 infections in light of the Omicron variant." *Id.* ¶ 7. In addition, the government stated, *id.* ¶ 8:

> [T]he Defendant was convicted of conspiracy to commit Hobbs Act Robbery in August 2020 and was sentenced on October 15, 2021 in Case No. JKB-18-408. The Defendant filed a Notice of Appeal to the United States Court of Appeals to [sic]

the Fourth Circuit. Now that the Hobbs Act case has been resolved, the parties are in discussions concerning possible resolution of this case, including whether a motions hearing and trial schedule are necessary. To allow time for those discussions to conclude, the United States believes that the time up to January 31, 2022 should be excluded from the Speedy Trial Act.

By Order of January 6, 2022 (ECF 28), I granted the Fourth Consent Motion to Exclude. In particular, I ordered that any delay in the trial of the case from October 15, 2021 through January 31, 2022, "shall be excluded pursuant to 18 U.S.C. §§ 3161(h)(1)(B), (h)(1)(D), and (h)(7)(A), for the reasons set forth . . . in the Government's motion, which are incorporated herein." And, for the reasons stated in the Government's Fourth Consent Motion, which were also "incorporated," I found "that any delay resulting from the continuance of the imposition of dates for the filing of pretrial motions, the motions hearing, and the trial in this case is in the interest of justice and outweighs the interests of the public and the Defendant in a speedy trial." ECF 28.

Mr. Balter sent an email to the government's counsel on January 11, 2022. ECF 72-5. He stated, *id.*: "Thx for taking the time to speak with me about this case today. Confirming we discussed holding the pending firearms case in abeyance pending the disposition of the appeal of the Hobbs Act conspiracy appeal."

In an Order of July 27, 2022 (ECF 31), I directed counsel to provide the Court with a status report, due by August 8, 2022. I noted that the "case has been pending for some time." *Id.* The government submitted the status report on August 1, 2022, "with the consent of the Defendant's counsel." ECF 32 ("First Status Report"). The government wrote, *id.*:

> The parties previously requested that this Court permit [defendant's] Hobbs Act case [*United States v. Jesse Elder et al.*, ELH-18-0408] to proceed to trial before entering a scheduling order in the instant case.

> The Hobbs Act case proceeded to trial in August 2020 before Chief Judge Bredar, and the Defendant was convicted of Conspiracy to Commit Hobbs Act Robbery and acquitted of substantive Hobbs Act robbery. In October 2021, the Defendant was sentenced to 124 months' incarceration. The defendant appealed

his conviction and sentence to the Fourth Circuit.  See Fourth Circuit Case No. 21-4569.  The defendant is represented by different counsel in his appeal.  The appeal was fully briefed on May 26, 2022.  At this point, there has been no indication from the Fourth Circuit concerning whether the appeal will be scheduled for argument or decided on the briefs.

> The parties respectfully request that the Court continue to delay entering a scheduling order in this case for at least 60 more days.  The outcome of the Defendant's appeal in the Hobbs Act case might impact plea discussions in the instant case, which are ongoing.  Accordingly, the parties respectfully request to submit a joint status report on September 30, 2022.

By Order of August 4, 2022 (ECF 33), I approved the parties' request to delay entering a scheduling order.  And, I directed the parties to file another status report by October 3, 2022.  *Id.*

As directed, the government filed a joint status report on October 3, 2022.  ECF 34 ("Second Status Report").  It advised that defendant's appeal in the Hobbs Act case remained pending and, on behalf of both parties, it asked the Court to delay entering a scheduling order for an additional 30 days.  *Id.*  I approved the parties' request.  ECF 35.

The parties filed another joint status report on November 3, 2022.  ECF 36 ("Third Status Report").  They requested another 30-day delay, explaining that the Hobbs Act case remained pending.  ECF 36.  I granted the joint request on the same date.  ECF 37.

By Order of July 19, 2023 (ECF 38), I directed counsel to file a status report, due by July 24, 2023.  I said, *id.*:

> You last provided the Court with a status report on November 3, 2022.  ECF 36.  In your status report, you advised that the parties requested to hold this case in abeyance, pending the Fourth Circuit's ruling in regard to the appeal of Mr. Brooks's other case: JKB-18-0408.

> On January 3, 2023, the Fourth Circuit affirmed Mr. Brooks's conviction in JKB-18-0408.  ECF 224.  Since then, I have heard nothing further from counsel.

The government responded with a joint status report on July 24, 2023.  ECF 39 ("Fourth Status Report").  The government wrote:

In August 2020, the Defendant was convicted of conspiracy to commit Hobbs Act robbery, and acquitted of substantive Hobbs Act robbery. The Defendant was sentenced to 124 months' incarceration in October 2021. The Defendant appealed his conviction and sentence to the Fourth Circuit. See Fourth Circuit Case No. 21-4569. On January 3, 2023, the Fourth Circuit Affirmed the Defendant's conviction and sentence.

On January 9, 2023, the Defendant filed a petition for a writ of certiorari to the Supreme Court of the United States. See Supreme Court Case No. 22-6522. The Supreme Court denied the Defendant's petition on February 21, 2023.

The parties previously requested that the Court delay entering a scheduling order in this case because the outcome of the Defendant's appeals [sic] in the Hobbs Act case impacted the parties' plea discussions. In addition to the Hobbs Act case, in March 2023, the Defendant had a post-conviction hearing in the Circuit Court for Howard County with respect to a prior criminal conviction. The Defendant's post-conviction motion was denied on June 7, 2023. This post-conviction proceeding was also impacting the parties' plea discussions in this case.

Now that the Hobbs Act case and the Howard County post-conviction litigation have concluded, the parties are reengaged in plea discussions. The parties respectfully request that the Court continue to delay entering a scheduling order in this case for at least 45 more days to allow plea discussions to continue. The parties request to submit another joint status report to the Court by September 7, 2023.

By Order of July 24, 2023 (ECF 40), I granted the parties' request. And, I directed the parties to file a status report by September 7, 2023. *Id.*

On September 7, 2023, the government filed another joint status report. ECF 41 ("Fifth Status Report"). It stated, *id.*:

Since the filing of the July 24, 2023 status report, the parties have been engaged in productive plea discussions. The government is currently in the process of finalizing a proposed plea agreement, which it will present to counsel for the Defendant within the next few days.

Given the parties' recent plea discussions, the parties anticipate that they will be able to reach an agreement to resolve this case without the need for a trial. Accordingly, the parties respectfully request to provide the Court with a further status report by September 22, 2023.

By Order of September 8, 2023 (ECF 42), I granted the parties' request in the Fifth Status Report.

Then, on September 21, 2023, the government provided the Court with defendant's signed plea agreement. In particular, pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence of 30 months' imprisonment in the firearm case, to run concurrent with defendant's sentence in the Hobbs Act case. At defendant's request, I scheduled a combined guilty plea proceeding and sentencing, set for October 6, 2023. ECF 43.[10] And, the parties submitted sentencing memoranda. ECF 45; ECF 47.

Defendant appeared before the Court on October 6, 2023, for the purpose of entering a guilty plea. ECF 48. But, as in his Hobbs Act case, defendant unexpectedly decided not to enter a guilty plea. ECF 57 at 2–3. Upon learning of the defendant's decision, I stated, in part, *id.* at 3–5:[11]

> And, I just want to note that it's a 2020 case, so I'm going to want to get it tried as quickly as possible. But the record should reflect the delay was, as I've understood it, at the request of both sides because there was an appeal in the case that Judge Bredar tried, an unrelated case, and that was a matter that I know we were going to be discussing if we got that far, but JKB-18-0408.
>
> *         *         *
>
> [T]hat [case] resulted in an appeal, and the appeal was affirmed recently, relatively recently, and this case, the one—the one before me, the other Mr. Brooks case, 20-0034, has been held in abeyance because that's how you all wanted it to be handled. Because, obviously, if the appeal was affirmed—if the conviction was affirmed it might have an impact on how you handled this case. So I hope I've explained, for the record, the delay.

The government added that defendant had also petitioned the Supreme Court for certiorari in the Hobbs Act case. *Id.* at 5. And, the government cited the fact that defendant was involved

---

[10] As noted, defendant is already serving a sentence of 124 months in the Hobbs Act case. Presumably for this reason, the defense asked to proceed directly to sentencing immediately after the guilty plea proceeding in the firearm case.

[11] Given the unexpected decision of Mr. Brooks, the Court had not prepared a thorough review of the grounds for delay in this case.

in post-conviction proceedings in Howard County as another reason that the parties had asked this Court to "hold this case in abeyance." *Id.* Further, the government noted that the parties "had been engaged in quite substantive plea discussions" in the felon-in-possession case. *Id.*

I then "invite[d] Mr. Balter to add anything he want[ed.]" *Id.* at 5. Counsel for defendant did not object to the recollection of the reasons for the delay as presented by the Court or the government, nor did he raise any concern relating to defendant's speedy trial rights. *See id.* But, defense counsel asked that, in setting a trial date, the Court first allow him sufficient time to prepare and submit pretrial motions. *See id.* at 6. He said, *id.*:

> I believe that there are—motions have not been filed yet. There are Fourth Amendment and statement issues that I would be filing motions on, so that we would need a date for working back from there; hopefully have a motion's hearing in advance of trial and obviously the time for the filing of motions as well.

The Court entered a Scheduling Order on October 6, 2023. ECF 49. Pursuant to the Scheduling Order, defense motions were due by the close of business on December 8, 2023, and trial was scheduled for April 15, 2024.

Defendant filed several motions on December 8, 2023. ECF 50; ECF 51; ECF 52; ECF 53. This Memorandum Opinion addresses only the speedy trial Motion (ECF 50).

**B.**

Defendant was indicted in the firearm case on January 28, 2020, six weeks before a national emergency was declared due to the global pandemic known as COVID-19. And, between March 2020 and February 2022, jury trials in this District were frequently suspended as a result of the pandemic. Like the defendant's Hobbs Act case, the COVID-19 pandemic is integral to understanding the delay at issue here.

14

Health officials confirmed the first case of COVID-19 in the United States on January 31, 2020.[12]  *See United States v. Pair*, 84 F. 4th 577, 580 (4th Cir. 2023).  On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic.  *See Seth v. McDonough*, 461 F. Supp. 3d 242, 247 (D. Md. 2020).  Two days later, on March 13, 2020, President Trump declared the COVID-19 pandemic a national emergency.  *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19)*, TRUMP WHITE HOUSE (Mar. 13, 2020), https://perma.cc/WF55-8M4P.  That declaration was extended on several occasions.  *See*, *e.g.*, 88 Fed. Reg. 9385 (Feb. 10, 2023).

The pandemic caused "a public health crisis more severe than any seen for a hundred years."  *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020), *aff'd in part, dismissed in part*, 2022 WL 1449180 (4th Cir. May 9, 2022) (per curiam).  Indeed, the COVID-19 pandemic has been described as the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020), *abrogation on other grounds recognized by United States v. Philibert*, 557 F. Supp. 3d 456 (S.D.N.Y. 2021) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration.").

Of relevance here, for a significant period, the pandemic "produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it."  *Cameron v. Bouchard*, 462 F. Supp. 3d 746, 752–53 (E.D. Mich. 2020), *vacated on other grounds*, 815 F. App'x 978 (6th Cir. 2020).  As the Fourth Circuit has put it, in the early months of 2020, "a new reality set in.  Nations around the world announced stringent limitations on in-person interaction . . . businesses ground to a halt; and death tolls mounted."  *Pair*, 84 F.4th at 580.

---

[12] The Court may take judicial notice of matters of public record.  *See* Fed. R. Evid. 201.

The courts, too, were impacted by the pandemic.  On March 14, 2020, Chief Judge Bredar issued a "Second Amended Standing Order 2020-03," regarding "Court Operations Under the Exigent Circumstances Created by COVID-19."  *See In re Standing Orders*, 1:00-mc-0308, ECF 93.  The Standing Order provided that, "effective immediately, all civil and criminal petit jury selections and jury trials scheduled to commence now through April 24, 2020 . . . are POSTPONED and CONTINUED pending further Order of the Court."  *Id.* at 1.  Moreover, the Standing Order provided that "the time period of the continuances implemented by this Order will be excluded under the Speedy Trial Act, as the Court specifically finds that the ends of justice served by ordering the continuances outweigh the best interests of the public and each defendant in a speedy trial, pursuant to 18 U.S.C. § 3161(h)(7)(A)."  *Id.* at 2.   Subsequent standing orders extended the suspension of criminal and civil trials until July 31, 2020.  *Id.*, ECF 97; ECF 99; ECF 103.[13]

After the suspension expired, the District Court "conduct[ed] some jury trials and a limited number of other necessary in-person proceedings."  *Id.*, ECF 119 (Standing Order 2020-20) at 1.  As mentioned, to my knowledge, defendant's Hobbs Act case, tried in late August of 2020, was the first jury trial to be conducted in this District after the suspension expired.  As the District endeavored to resume jury trials, the defendant's Hobbs Act case was deemed a suitable case for trial.   Among other things, only one defendant remained and trial was not expected to be protracted.[14]  But, by the fall of 2020, due to worsening health conditions, the Court again had to

---

[13] Pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), 134 Stat. 281, Congress authorized the federal courts to conduct certain criminal proceedings by video conferencing, with the consent of the defendant.  *See, e.g.*, *In re Standing Orders*, 1:00-mc-0308, Standing Order 2020-06 (March 29, 2020), ECF 98.  That authorization is not pertinent here.

[14] To my recollection, in his role as Chief Judge, Judge Bredar wanted to preside at the trial so that he could personally assess the safety protocols that the Court had devised and implemented.

suspend all in-court proceedings, effective November 16, 2020. *Id.* at 2. Chief Judge Bredar later

extended the suspension until February 26, 2021. *Id.*, ECF 120; ECF 123.

On or after March 15, 2021, the District Court "resume[d] conducting some jury trials."

*Id.*, ECF 127 at 1–2.[15] Then, by December 22, 2021, because of another resurgence of COVID-

19, the Court again suspended jury trials. Chief Judge Bredar ordered that, effective December

27, 2021, all jury trials were to be postponed until at least January 24, 2022. *Id.*, ECF 142 at 2.

On January 12, 2022, the District Court extended the postponement until February 14, 2022. *Id.*,

ECF 145. Judge Bredar stated: "Jury selections will resume on that date absent further Order

from this Court." *Id.* at 1.

Thereafter, no further orders were issued. *See In re Standing Orders*, 1:00-mc-0308. And,

on December 14, 2022, the Court announced "that, effective January 3, 2023," it would "return to

---

I pause to note that, throughout the pandemic, the District Court went to great lengths in its attempt to conduct in-court proceedings. A committee of district judges met regularly to consider countless issues affecting Court operations, striving to balance the due process interests of litigants and the need for public safety.

For example, the Court retained an epidemiologist from Johns Hopkins as a consultant. And, using Court funding, the Court conducted "smoke tests" to assess air flow in the ceremonial courtroom, and installed ceiling fans to improve air circulation; the Court installed a plexiglass booth for counsel in Courtroom 1A; in various courtrooms, the Court installed plexiglass around jury boxes, witness stands, at podiums used by lawyers, at the benches, and elsewhere; the Court purchased air filters for the courtrooms; the Court utilized an electronic system to enable counsel to confer with the judge from the trial tables, without having to approach the bench; the Court provided COVID-19 test kits to court staff and jurors; and the Court installed electronic devices around the Courthouse to check for fever.

[15] The Court recalls that, even when trials resumed, there were limitations on how many cases could be tried at once, and judges were not able to schedule their own cases, as is customary. For example, there were limits on the number of prospective jurors who could be brought to the Courthouse, due to spacing requirements. And, as the Court navigated uncharted waters, a plan was devised that required the use of two courtrooms for the trial of one case. One courtroom was used for the trial itself, and the other was used by jurors as their jury room, so that they could spread out. This limited the number of available courtrooms.

full and (nearly) unrestricted operations." *Id.*, ECF 149 at 2.  Therefore, the Court rescinded "all prior orders limiting the Court's operations due to the COVID-19 pandemic." *Id.*

## II.   Legal Standard

In his Motion, defendant asserts violations of both his statutory and constitutional rights to a speedy trial.  ECF 50 at 3–5.  I begin by reviewing the law applicable to these claims.

### A.  Speedy Trial Act of 1974

The Speedy Trial Act of 1974 ("Speedy Trial Act" or "Act"), 18 U.S.C §§ 3161–3174, "generally requires a federal criminal trial to begin within 70 days after a defendant is charged or makes an initial appearance." *Zedner v. United States*, 547 U.S. 489, 492 (2006) (citing 18 U.S.C. § 3161(c)(1)).  If a defendant is not brought to trial within the required time limit, "the information or indictment shall be dismissed on motion of the defendant."  18 U.S.C. § 3162(a)(2).

Notably, "the Act contains a detailed scheme under which certain specified periods of delay are not counted." *Zedner*, 547 U.S. at 492.  But, "[s]ome of these delays are excludable only if the district court makes certain findings enumerated in the statute." *Bloate v. United States*, 559 U.S. 196, 203 (2010) (citing 18 U.S.C. § 3161(h)(7)); *see United States v. Hart*, 91 F.4th 732, 739–740 (4th Cir. 2024).

In particular, 18 U.S.C. § 3161(h)(7)(A) provides that a court "shall" exclude the following:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.  No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

In deciding whether to grant such a continuance, a court "shall consider" the factors identified at 18 U.S.C. § 3161(h)(7)(B)(i)–(iv), "among others."   The statutory factors include "[w]hether the failure to grant such a continuance . . .would likely make a continuation of such proceeding impossible, or result in a miscarriage of justice," *id.* § 3161(h)(7)(B)(i); "'whether the case is complex or unusual," *see id.* § 3161(h)(7)(B)(ii); "whether counsel need additional time to prepare effectively, and whether delay is necessary to ensure continuity of counsel.'"   *Pair*, 84 F.4th at 584 (quoting *United States v. Henry*, 538 F.3d 300, 303–04 (4th Cir. 2008)); *see* 18 U.S.C. § 3161(h)(7)(B)(iv).

Although "the Speedy Trial Act is clear that the district court must 'se[t] forth, in the record of the case, either orally or in writing, its reasons' for finding that the ends of justice outweigh the need for a speedy trial, 'the Act is ambiguous on precisely when those findings must be' put on the record." *Pair*, 84 F.4th at 584 (quoting *Zedner*, 547 U.S. at 506–07)).   But, the Fourth Circuit recently stated in *United States v. Smart*, 91 F.4th 214, 221 (4th Cir. 2024):  "[T]he district court need not set forth its reasoning at the time of the continuance, but may place it on the record later, so long as the court does so before ruling on a motion to dismiss under the Speedy Trial Act."

Nevertheless, "'[t]he best practice . . . is for a district court to put its findings on the record at or near the time when it grants the continuance,' [but] the district court need only do so by the time it rules on a defendant's motion to dismiss under the Speedy Trial Act." *Pair*, 84 F.4th at 584 (quoting *Zedner*, 547 U.S. at 507 n.7).   "This after-the-fact recording suffices so long as it is clear from the record that the court conducted the mandatory balancing contemporaneously with the granting of the continuance." *Pair*, 84 F.4th at 584 (citation and internal quotation marks omitted); *see also Zedner*, 547 U.S. at 506 ("[T]he findings must be made, if only in the judge's mind, before granting the continuance.").

"[N]unc pro tunc or retroactive continuances that are made after the expiration of the time within which the defendant should have been tried for reasons the judge did not consider before the lapse of the allowable time are inconsistent with the Act." *United States v. Carey*, 746 F.2d 228, 230 (4th Cir. 1984). But, under *Pair*, 84 F.4th at 584, an "after-the-fact recording" of the *reasons* for a continuance is permissible, if the continuance was granted within the 70-day period of allowable delay. In contrast, under *Carey*, 746 F.2d at 230, an "after-the-fact" *grant* of a continuance—as distinguished from the *post hoc* pronouncement of reasons for a previously-granted continuance—is impermissible.

In sum, "Section 3161(h)(7) tells [a court] that, to exclude delay caused by a continuance, two things must have happened: (1) the 'judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial"; and (2) 'the court sets forth, in the record of the case, either orally or in writing, its reasons for [the] finding[s].'" *Smart*, 91 F.4th at 221 (quoting 18 U.S.C. § 3161(h)(7)(A)).

"Other delays are automatically excludable, *i.e.*, they may be excluded without district court findings." *Bloate*, 559 U.S. at 203; *see Hart*, 91 F.4th at 737. Of relevance here, the automatically excludable delays "shall" include "[a]ny period of delay resulting from other proceedings concerning the defendant." 18 U.S.C. § 3161(h)(l). By statute, the period of "delay resulting from other proceedings concerning the defendant" is excludable, "including but not limited to" (18 U.S.C. § 3161(h)(1)), eight types of proceedings enumerated in 18 U.S.C. § 3161(h)(1)(A)–(H). Among the eight enumerated proceedings are "trial with respect to other charges against the defendant," *id.* § 3161(h)(1)(B); "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition

of, such motion," *id.* § 3161(h)(1)(D); and "delay resulting from consideration by the court of a proposed plea agreement . . . ." *Id.*, § 3161(h)(1)(G).[16]

### B.  The Sixth Amendment Right to a Speedy Trial

"The Sixth Amendment guarantees the 'right to a speedy and public trial' for all criminal defendants." *Pair*, 84 F.4th at 588 (quoting U.S. Const. amend. VI).  "The bounds of this right are 'impossible to determine with precision.'" *Pair*, 84 F.4th at 588 (quoting *Barker v. Wingo*, 407 U.S. 514, 521 (1972)).  Therefore, "any inquiry into a [constitutional] speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Barker*, 407 U.S. at 522.

In particular, the "Supreme Court in *Barker* specified four factors courts must balance when determining whether a defendant's constitutional right to a speedy trial has been violated: the '[l]ength of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *Pair*, 84 F.4th at 588–89 (quoting *Barker*, 407 U.S. at 530) (alteration in *Pair*).  "To prevail on a speedy trial claim, a defendant must 'establish that on balance, [the] four separate factors weigh in his favor.'" *Pair*, 84 F.4th at 589 (quoting *United States v. Hall*, 551 F.3d 257, 271 (4th Cir. 2009)) (alteration in *Hall*).

"The duration of the delay, in addition to being a factor in the [four-part *Barker*] test, also is a threshold requirement because the defendant must establish that the length of the delay is at least presumptively prejudicial." *United States v. Burgess*, 684 F.3d 445, 451 (4th Cir. 2012) (citing *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)).  A "postaccusation delay [is] presumptively prejudicial at least as it approached one year." *Doggett*, 505 U.S. at 652 n.1.

---

[16] The Court notes that the period of time that a motion is "under advisement by the Court" is also excludable, but "not to exceed thirty days.".  18 U.S.C. § 3161(h)(1)(H).

Indeed, "a postaccusation delay as short as eight months may qualify as presumptively prejudicial in cases of limited complexity." *Burgess*, 684 F.3d at 452 (citing *United States v. Woolfolk*, 399 F.3d 590, 598 (4th Cir. 2005)).

With regard to the second *Barker* factor, the reasons for a delay, the Fourth Circuit has stated that a court should characterize the "reasons for a trial delay . . . as either valid, improper, or neutral." *Hall*, 551 F.3d at 272 (citing *United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998)). In *Barker*, 407 U.S. 514, the Supreme Court explained, *id.* at 531:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.[] A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Other valid reasons include "defense counsel's urgent medical need" and "the necessity of allowing new counsel to prepare for trial." *Pair*, 84 F.4th at 589 (citations omitted). And, of relevance here, the Fourth Circuit has concluded that "'the unpredictable and unavoidable public health crisis presented by the COVID-19 pandemic'" presents "a valid reason for delay." *Id.* (quoting *United States v. Vladimirov*, 2023 WL 2535263, at *5 (4th Cir. Mar. 16, 2023)).

"The third *Barker* factor is the 'timeliness and vigor of the assertion of the speedy trial guarantee.'" *Pair*, 84 F.4th at 590 (quoting *Hall*, 551 F.3d at 271). But, "[f]ailure to assert the right to a speedy trial, and even the explicit waiver of that right, is not dispositive of a Sixth Amendment speedy-trial claim . . . ." *United States v. Thomas*, 55 F.3d 144, 150 (4th Cir. 1995) (citing *Barker*, 407 U.S. at 528–30). However, "if a defendant fails to assert the right it will be difficult for him to 'prove that he was denied a speedy trial." *Pair*, 84 F.4th at 590 (quoting *Thomas*, 55 F.3d at 150).

"The final factor" under *Barker*, "prejudice, 'should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect.'" *Pair*, 84 F.4th at 590 (quoting *Barker*, 407 U.S. at 532). "These interests include '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *Pair*, 84 F.4th at 590 (quoting *Barker*, 407 U.S. at 532). "The final interest is the most salient 'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Pair*, 84 F.4th at 590 (quoting *Barker*, 407 U.S. at 532).

### III.    Discussion

### A.

Defendant asserts that his statutory right to a speedy trial was violated because "there were periods of delay that exceeded 70 days that were not excludable under the Speedy Trial Act." ECF 50 at 3. Curiously, defendant does not specify the "periods of delay" that, in his view, were not excludable under the Act. Defendant also asserts that the "extreme delay between [his] indictment and the scheduled trial date," in combination with the "oppressive pretrial incarceration" and "anxiety" occasioned by the delay, violate his constitutional right to a speedy trial. *Id.* at 4.

In its Opposition, the government argues that, "based on a combination of automatic exclusions and ends-of-justice exclusions, every day that this case has been pending is properly excluded under the Speedy Trial Act." ECF 72 at 22. In particular, the government asserts that the following exclusions apply, *id.* at 32:

1.  January 2[8[17]], 2020 – February 21, 2023, automatic exclusion [under 18 U.S.C. § 3161(h)(1)(B)] based on the trial, sentencing, and appeals in the Hobbs Act Case;

2.  March 13, 2020 – March 27, 2020, automatic exclusion [under 18 U.S.C. § 3161(h)(1)(D)]  based on the Defendant's motion for a detention hearing;

_____

[17] Defendant was indicted on January 28, 2020. ECF 1. Therefore, the Court assumes that the government's reference to January 20, 2020, was a typographical error.

3.  March 16, 2020 – January 31, 2022, ends-of-justice exclusions based on the COVID-19 pandemic and the parties' request to hold this case in abeyance;[18]

4.  October 22, 2021 – February 21, 2023, ends-of-justice exclusion based on the parties' plea discussions while the Hobbs Act Case was on appeal;

5.  August 12, 2022 – October 4, 2023, automatic exclusion [under 18 U.S.C. § 3161(h)(1)(B)] based on the Defendant's state court post-conviction litigation;

6.  February 21, 2023 – September 21, 2023, ends-of-justice exclusion based on the parties' continued plea negotiations after the appeal in the Hobbs Act Case was concluded;

7.  September 21, 2023 – October 6, 2023, automatic exclusion [under 18 U.S.C. § 3161(h)(1)(G)] based on the parties' plea negotiations and the Court's consideration of the parties' proposed plea  agreement;

8.  October 6, 2023 – December 8, 2023, ends-of-justice exclusion based on the Defendant's request to prepare and file pretrial motions;

9.  December 8, 2023 through the disposition of pretrial motions, automatic exclusion [under 18 U.S.C. § 3161(h)(1)(D)] based on the Defendant's filing of pretrial motions; and

10. October 6, 2023 – April 15, 2024, ends-of-justice exclusion based on the time needed for effective preparation for trial.

The parties filed four consent motions to exclude: ECF 18; ECF 20; ECF 25; ECF 27.  In response, the Court granted four continuances, by orders of August 3, 2020 (ECF 19); February 2, 2021 (ECF 21); June 14, 2021 (ECF 26); and January 6, 2022 (ECF 28).  The government contends that all four orders were "amply justified under the ends-of-justice provision."  ECF 72 at 29. According to the government, each of these orders evidences the Court's finding that, in light of

---

[18] As noted, an attorney inquiry hearing was held in this case on March 15, 2021.  ECF 22. The magistrate judge relieved defense counsel of his CJA appointment.  *Id.*  Also on March 15, 2021, Mr. Balter was appointed as new defense counsel.  ECF 24.  Obviously, he needed time to familiarize himself with the case, which would also account for delay.  Presumably because there are several other grounds for excluding the time in question, the government did not cite the change in counsel as a basis for exclusion.

the ongoing COVID-19 pandemic and defendant's pending Hobbs Act robbery case, the ends of justice served by a continuance outweighed the interest of defendant and the public in a speedy trial. *Id.* at 28–29.

The government acknowledges that, after the parties filed the Fourth Consent Motion to Exclude on January 6, 2022 (ECF 27), "no additional motions to exclude[] Speedy Trial time were filed in this case." ECF 29.  Nonetheless, the government observes that the parties filed five joint status reports — on August 1, 2022 (ECF 32); October 3, 2022 (ECF 34); November 3, 2022 (ECF 36); July 24, 2023 (ECF 39); and September 7, 2023 (ECF 41) — in which they "explained . . . that the Hobbs Act Case was impacting their ongoing plea discussions, and . . . requested additional time so that they could continue attempting to reach a resolution [in the firearm case] without the need for a trial." ECF 72 at 30.  Notably, the Court approved each of these requests by a marginal Order.  *See* ECF 33; ECF 35; ECF 37; ECF 40; ECF 42.

According to the government, the Court's marginal orders are sufficient to make "'clear from the record that the court conducted the mandatory balancing [between the ends of justice served by a delay and the interest of the defendant and the public in a speedy trial] contemporaneously with the granting of the continuance.'"  ECF 72 at 30 (quoting *Pair*, 84 F.4th at 584).  However, the government acknowledges that the Court's issuance of the marginal Orders may not have discharged the Court's duty to place its ends-of-justice findings on the record.  ECF 72 at 30.  Therefore, the government asks the Court to place findings on the record that the ends of justice justify the exclusion of (1) the time during which "the appeals in the Hobbs Act Case were pending (October 22, 2021 through February 21, 2023)"; (2) "the post-appeal timeframe during which the parties continued negotiating a plea agreement (February 21, 2023 through September 21, 2023)"; (3) "the timeframe between October 6, 2023 (when defendant appeared for

a guilty plea but decided not to enter it) and December 8, 2023 (when the Defendant filed his pretrial motions in this case)"; and (4) the time between October 6, 2023 and the scheduled date of trial, on April 15, 2024. *Id.* at 30–31.

As noted, the government does not assert estoppel in its Opposition. But, in the Supplemental Response, the government argues that defendant should be estopped from seeking dismissal of the Indictment on the grounds that his rights under the Speedy Trial Act were violated. According to the government, in *Zedner*, 547 U.S. 489, the Supreme Court considered "several factors to determine if estoppel was appropriate, including (1) whether the party's later position is 'clearly inconsistent with its earlier position'; (2) 'whether the party has succeeded in persuading a court to accept that party's earlier position'; and (3) 'whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" ECF 91 at 2 (quoting *Zedner*, 547 U.S. at 504). In the government's view, each of those factors favors the application of estoppel in this case.

Defendant's Reply to Supplemental Response (ECF 92) is nominally addressed to the government's invocation of judicial estoppel. However, it is largely devoted to presenting—for the first time in a written submission—"defendant's basic argument as to why there has been a violation of the Speedy Trial Act in this case." *Id.* at 1.

According to defendant, "there were two extended periods of delay, both for periods considerably greater than 70 days, for which there was *no order of continuance* in place." *Id.* (emphasis in ECF 92). In particular, defendant states, *id.* at 1–2:

> The first period of delay began on January 31, 2022, the last excluded day pursuant to the speedy trial order issued on January 6, 2022 (ECF No. 28), and ran through date [sic] of the next status report to the Court that was filed on August 1, 2022 (ECF No. 32). The delay during that period was 182 days, well in excess of 70 days statutory limit under the Speedy Trial Act. The second period of delay in which there was no order of continuance was December 2, 2022, the last day excluded

pursuant to the status report dated November 4, 2022 (ECF No. 37) and ran through the date of the next status report filed with the Court on July 24, 2023 (ECF No. 39). The delay during that period was 234 days, again well in excess of 70 days.

Defendant argues that, because there were, in his view, no continuances in place during the two periods he identifies, he cannot be deemed to have requested or consented to those periods of delay. *Id.* at 3–4. And, defendant asserts that, absent such a request or consent, he cannot be subject to estoppel. *Id.* at 4.

With regard to defendant's constitutional right to a speedy trial, the government concedes that the length of the delay at issue, which is now more than four years, "favors the Defendant." ECF 72 at 33. Nonetheless, the government maintains that "each of the remaining *Barker* factors favor[s] the government." *Id.*

First, the government asserts that the reasons for the delay—the Court's limited operations during the COVID-19 pandemic and defendant's wish to defer plea negotiations until the resolution of his Hobbs Act robbery case—were legitimate and not attributable to the government. *Id.* at 34.

Second, with regard to "'the timeliness and vigor of the assertion of the speedy trial guarantee,'" the government argues that defendant's "assertion of his speedy trial right was extremely delayed." *Id.* (quoting *Hall*, 551 F.3d at 271). The government observes, ECF 72 at 34–35:

> Throughout the entire pendency of this case, the Defendant affirmatively disclaimed his desire for a trial. Instead, the Defendant engaged in plea discussions with the government and repeatedly submitted joint requests to delay setting a trial schedule. . . . In fact, even after the Defendant decided not to enter a guilty plea on October 6, 2023, the Defendant did not mention his speedy trial rights. Rather, when the Court said it would try to get the case tried as quickly as possible, counsel for the Defendant requested more time to prepare and file pretrial motions. The Defendant did not voice any opposition.

Third, the government argues that defendant has failed to demonstrate that the delay caused prejudice. *Id.* at 35. According to the government, "[w]hen considering [a] delay's adverse impact on the defense, courts 'consider three interests of defendants: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *Id.* (quoting *United States v. Robinson*, 55 F.4th 390, 400 (4th Cir. 2022)) (additional citation and internal quotation marks omitted). But, the government argues that defendant's claim of oppressive pretrial incarceration is misplaced, because defendant "was not in custody because of this case—he was in primary custody in the Hobbs Act Case." ECF 72 at 35. In addition, citing *United States v. Ballard*, 727 F. App'x 757, 761 (4th Cir. 2018), the government asserts that defendant's claim of anxiety as a result of the pending charge "is insufficient on its own to establish prejudice." ECF 72 at 35.

Fourth, according to the government, defendant "does not even claim that the delay has impacted his ability to defend this case." *Id.* at 36. In particular, the government points out that defendant "has not identified any exculpatory evidence that was lost, nor has he identified any evidence that is unavailable because of the delay." *Id.* (citing *United States v. Reavis*, 48 F.3d 763, 770 n.2 (4th Cir. 1995); *Pair*, 84 F.4th at 590).

## B.

I begin by addressing the government's invocation of the estoppel doctrine with respect to the Speedy Trial Act. In my view, this may be one of the rare cases in which the doctrine is appropriately applied to a criminal defendant's assertion that his rights under the Speedy Trial Act were violated. As the record reflects, defendant joined in all nine requests for a continuance. Apparently, he did so because he thought that, by delaying the firearm case until the Hobbs Act case was resolved, he would be in a better position to engage in plea discussions in the firearm

case.  In making the requests, defendant took the position that the requested continuances were permissible under the Speedy Trial Act.  Now, he takes a contrary position, and seeks a windfall by claiming injury from the very relief he requested on nine separate occasions.  In my view, it is to disarm exactly such a stratagem that courts have fashioned the doctrine of judicial estoppel.

"'Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation.'" *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 457 (4th Cir. 2017) (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28 (4th Cir. 1995)); *see Martineau v. Wier*, 934 F.3d 385, 393 (4th Cir. 2019); *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007).  Judicial estoppel, which is an equitable doctrine, is "designed to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Martineau*, 934 F.3d at 393 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)); *see Folio v. City of Clarksburg*, 134 F.3d 1211, 1217 (4th Cir. 1998) (observing that judicial estoppel "exists to prevent litigants from playing 'fast and loose' with the courts").

In *Zedner*, 547 U.S. 489, the Supreme Court acknowledged that the doctrine of judicial estoppel could, in certain circumstances, bar a criminal defendant from asserting a violation of his rights under the Speedy Trial Act.  *Id.* at 504; *see United States v. Velazquez*, 52 F.4th 133, 140–142 (4th Cir. 2022).  In *Zedner*, the Court explained, 547 U.S. at 504 (internal quotation marks and citation omitted):

> Although this estoppel doctrine is equitable and thus cannot be reduced to a precise formula or test, several factors typically inform the decision whether to apply the doctrine in a particular case:  First, a party's later position must be clearly inconsistent with its earlier position.  Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position . . . .  A third consideration is whether the party seeking to assert an

inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*United States v. Basking*, 853 F. App'x 783 (3d Cir. 2021), is also instructive. There, the Third Circuit concluded that a defendant was judicially estopped from arguing that two continuances "were not excludable because they were granted after the prior continuances had elapsed." *Id.* at 786. The Court wrote, *id.* at 786–87:

> [Defendant] consented to the granting of each motion. The motions each stated that the parties were "engaged in discussions regarding a plea agreement" and that "[a]dditional time" was needed to "permit the parties to explore fully the law and the particular circumstances associated with this case."[] . . . The District Court adopted the parties' position that the benefits "from a preindictment agreement which provides for judicial economy are substantial and in the best interest of justice." [Defendant] benefited from these continuances, receiving more time to try to negotiate a plea agreement and to get new counsel who ultimately tried the case. Accordingly, we conclude that there was no Speedy Trial Act violation.

The facts of this case, in which defendant repeatedly requested, and sought to benefit from, the delay of which he now complains, are strikingly similar to those in *Basking*. Moreover, each of the three factors identified in *Zedner* indicates that estoppel is an appropriate remedy in this case.

First, defendant's current position—that the delay created by the nine continuances granted at the joint request of the parties is inconsistent with the Speedy Trial Act—is plainly inconsistent with his previous position, stated in ways both express and implied, that the continuances, and the delay they occasioned, were permissible under the Act. Second, defendant has *nine times* succeeded in persuading this Court to accept his earlier position, and, until the filing of the Motion, did not once suggest that the delay jeopardized his right to a speedy trial. Third, to deny estoppel

in these circumstances would afford defendant an unfair advantage and cause an unfair detriment to both the government and the Court.

Defendant complains that there were at least two periods of delay in this case of more than 70 days, for which he claims that there was no applicable Order: the period between January 6, 2022, and August 1, 2022, and the period between November 3, 2022, and July 24, 2023.  But, I disagree with defendant's contention that during these periods of delay, "there was no continuance order in place."  ECF 92 at 4.[19]

Brooks acknowledges that delay between November 3, 2022, and July 24, 2023, was preceded by the Order of November 3, 2022.  ECF 37.  However, defendant asserts that the continuance granted by this Order expired on December 2, 2022—in other words, that the continuance lasted, *at most*, 30 days.  But, the plain terms of the Order of November 3, 2022 are to the contrary.  With that Order, the Court approved the parties' request "to delay entering a scheduling order . . . for *at least* 30 more days."  ECF 37 (emphasis added).  Of course, the continuance granted by the Order of November 3, 2022, was not of indefinite duration.  Its duration was determined by the time needed for the resolution of the Hobbs Act case and the parties' subsequent plea negotiations.

As discussed, *infra*, I also disagree that the period between January 6, 2022, and August 1, 2022, was not subject to a continuance order.  The delay until August 4, 2022, that followed the Order of January 6, 2022 (ECF 28), reflected the shared understanding of counsel and the Court that a continuance would remain in place pending resolution of the Hobbs Act case and subsequent plea negotiations.

---

[19] As noted, defendant argues that estoppel is inappropriate because, in the absence of a continuance order covering the two delays in question, he cannot be deemed to have consented to, or persuaded the Court to exclude, those delays.  ECF 92 at 4.

In sum, I readily conclude that defendant is estopped from seeking dismissal of the Indictment on the grounds that his rights under the Speedy Trial Act were violated.

## C.

Assuming, *arguendo*, that defendant is not estopped from asserting a violation of rights under the Speedy Trial Act, I conclude, in any event, that his statutory right to a speedy trial was not violated. As noted, the government proposes to divide the time since the date of the Indictment into ten periods of delay, some of which overlap. *See* ECF 72 at 32. The government has offered a basis for excluding each of these ten periods. *Id.*[20]

### 1.   January 28, 2020 to February 21, 2023

The government asserts that the time between January 28, 2020, the date on which defendant was indicted in this case, and February 21, 2023, the date on which certiorari was denied by the Supreme Court in the Hobbs Act case, is automatically excluded under 18 U.S.C. § 3161(h)(1) as a "delay resulting from other proceedings concerning the defendant."

There is some uncertainty as to what is encompassed by the term "resulting from trial," as it is used in 18 U.S.C. § 3161(h)(1)(B). For example, the Fifth Circuit has recognized that the term "resulting from trial" "leaves doubt whether this phrase excludes only the time required for the actual trial or the entire time a defendant . . . is . . . awaiting the disposition of the . . . charges against him." *United States v. Bigler*, 810 F.2d 1317, 1320 (5th Cir. 1987). And, construing the term "resulting from trial," the Ninth Circuit said in *United States v. Lopez-Espindola*, 632 F.2d 107, 110 (9th Cir. 1980):

It does not limit the time to only that period during which the defendant is in court for jury selection, testimony of witnesses, arguments to the jury, return of verdict,

---

[20] As mentioned, the government does not rely on the delay occasioned by the change in defense counsel, even though that change undoubtedly would have caused a delay if the defendant actually wanted to proceed to trial.

etc.  Anyone familiar with trial practice is aware of the fact that 'delay resulting from trial' not only involves the trial itself but also the period of time utilized in making necessary preparation for trial.

In *Bigler*, 810 F.2d at 1320, the Fifth Circuit adopted the Ninth Circuit's construction of "delay resulting from trial."  And, the court noted that "at least four other circuits, the District of Columbia, Eighth, Ninth and Eleventh," have rejected a construction that would limit "delay resulting from trial" to time spent in court on jury selection, witness testimony, opening and closing arguments, return of verdict, and the like.  *Id.* (citing *United States v. Goodwin*, 612 F.2d 1103 (8th Cir. 1980); *Lopez-Espindola*, 632 F.2d 107; *United States v. Garrett*, 720 F.2d 705, 710–11 (D.C. Cir. 1983), *cert. denied*, 465 U.S. 1037; *United States v. Rodriguez-Franco*, 749 F.2d 1555, 1558–59 (11th Cir. 1985)).

To the Court's knowledge, the Fourth Circuit has not provided a definitive construction of the term "delay resulting from trial."  Nonetheless, in *United States v. Shear*, 825 F.2d 783 (4th Cir. 1987), the Fourth Circuit concluded that a "district court . . . did not err in excluding the time between September 5, 1985," the date on which the defendant was transported to New Jersey for trial on other charges, "and March 10, 1986," the date on which the defendant was sentenced in the New Jersey case.  *Id.* at 785, 786.

As I see it, common sense and case law provide ample support for the proposition that, at the very least, the phrase "delay resulting from trial with respect to other charges," used in 18 U.S.C. § 3161(h)(1)(B), encompasses the time between the date on which a defendant is indicted on other charges and the date on which the defendant is sentenced on those charges.  Defendant was indicted in the Hobbs Act case on August 14, 2019, and sentenced on October 15, 2021.  JKB-18-0408, ECF 1, ECF 184, ECF 186.  He was indicted in this case on January 28, 2020, while the

Hobbs Act case was pending.  Therefore, I am satisfied that the time between January 28, 2020, and October 15, 2021, is automatically excluded under 18 U.S.C. § 3161(h)(1)(B).

The question remains whether the delays occasioned by the defendant's appeal to the Fourth Circuit and certiorari request to the Supreme Court may be automatically excluded under 18 U.S.C. § 3161(h)(1)(B) or, alternatively, under § 3161(h)(1)'s general provision for the exclusion of "other proceedings concerning the defendant."

In evaluating the question, I must consider, by analogy, the Fourth Circuit's recent decision in *United States v. Hart*, 91 F.4th 732.[21]  There, the Court held that time spent engaging in plea negotiations is not automatically excludable under 18 U.S.C. § 3161(h)(1)(G), which concerns delay due to a court's consideration of a plea agreement.  The Court explained that under *Bloate*, 559 U.S. 196, "if one of (h)(1)'s enumerated exclusions already covers a 'category of delay,' the 'limits' to that category within the relevant subparagraph are conclusive."  *Hart*, 91 F.4th at 739 (quoting *Bloate*, 559 U.S. at 208).  Based on the statutory text, the *Hart* Court determined that "subparagraph (h)(1)(G) [of the Speedy Trial Act] covers delays involving plea agreements," but "only excludes them once the court begins to consider a proposed agreement."  *Hart*, 91 F.4th at 739; *see* 18 U.S.C. § 3161(h)(1)(G) (excluding "delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government").  Therefore, the *Hart* Court held that the parties' plea negotiations did not fall within the exclusion.  *Hart*, 91 F.4th at 739.[22]

---

[21] Defendant filed the Motion on December 8, 2023 (ECF 50), more than a month before the Fourth Circuit issued its opinion in *Hart*, 91 F.4th 732, on January 25, 2024.  However, defendant did not supplement the Motion to address *Hart*'s significance.

[22] In so holding, the Court overruled two previous decisions in which it had "held that time spent engaging in plea discussions is automatically excluded under (h)(1)."  *Hart*, 91 F.4th at 738

Section 3161(h)(1)(B) of the Speedy Trial Act expressly provides for the automatic exclusion of "delay resulting from trial with respect to other charges against the defendant."   I must interpret the scope of this provision in accordance with the *Hart* Court's admonition that, "if (h)(1)'s enumerated exclusions already covers a 'category of delay,' the 'limits' to that category within the relevant subparagraph are conclusive."   *Hart*, 91 F.4th at 739 (citation omitted).   This precept, although clear enough in theory, proves difficult in application.

For example, the "category of delay" that is "covered" by 18 U.S.C. § 3161(h)(1)(B)— "trial with respect to other charges"—could be understood to consist of *all* proceedings related to the "trial" of "other charges" against the defendant, including the trial and any ensuing appeal arising from the trial.   But, by analogy to the subparagraph considered in *Hart*, 18 U.S.C. § 3161(h)(1)(B) could be read to set "limits to that category," by specifying that a delay related to "other charges" is excludable only if it "result[s] from trial with respect to" those charges.   *See Hart*, 91 F.4th at 739 (citation and internal quotation marks omitted).   On this construction, an appeal would not serve as a basis for an automatic exclusion under § 3161(h)(1)(B).   And, given the limits established by § 3161(h)(1)(B), it could not serve as a basis for an automatic exclusion under § 3161(h)(1)'s more general provision for the exclusion of "other proceedings concerning the defendant."

However, under another construction, the "category of delay" that is "covered" by 18 U.S.C. § 3161(h)(1)(B) could be understood to consist of "trial with respect to other charges against the defendant," and nothing more.   According to this construction, the "category of delay" defined by 18 U.S.C. § 3161(h)(1)(B) would be coextensive with the "limits to that category" that

_____

(citing *United States v. Keita*, 742 F.3d 184, 188 (4th Cir. 2014); *United States v. Leftenant*, 341 F.3d 338, 344–45 (4th Cir. 2003)).

this provision establishes.  As a result, non-trial proceedings related to other charges against the defendant would not even be "covered" by 18 U.S.C. § 3161(h)(1)(B).  And, if they are not "covered" by this provision, they would not be subject to any "limit" established by the provision.  As a result, they would be legitimate bases for an automatic exclusion, under to 18 U.S.C. § 3161(h)(1)'s general provision for the automatic exclusion of "other proceedings concerning the defendant."

The text of 18 U.S.C. § 3161(h)(1)(B) provides little basis on which to decide between these competing constructions.  *Cf. Bloate*, 559 U.S. at 206 n.10 (observing, with respect to 18 U.S.C. § 3161(h)(1)(D), that "the comma after the first phrase indicates that the second phrase modifies the scope of the excludable delay referred to in the first").  In my view, logic and common sense suggest that the period pertaining to the defendant's appeal in the Hobbs Act case, and his petition for certiorari, should be excludable as "other proceedings" that are part and parcel of a trial.  If so, the time from the inception of this case on January 28, 2020 through February 21, 2023, would be excludable.  But, as noted, *Hart* provides some support for another result: namely, that the only automatically excludable proceeding related to "other charges against the defendant" is the "trial," as that term is interpreted in *Shear*, 825 F.2d 783.

Nonetheless, for present purposes, I do not consider it necessary to hazard a passage through these poorly charted waters.  This is because, as discussed *infra*, the ends of justice clearly warrant exclusion of all delays related to the Hobbs Act case, including delays related to the defendant's appeal and his certiorari petition.

With regard to the question of what must be automatically excluded, I conclude simply that any delay attributable to the trial of the Hobbs Act case is automatically excluded under 18 U.S.C. § 3161(h)(1)(B), without deciding whether the appeal is also excluded under 18 U.S.C. §

3161(h)(1).  Therefore, the time between January 28, 2020, the date of defendant's indictment in the firearm case, *see* ECF 1, and October 15, 2021, the date on which defendant was sentenced in the Hobbs Act case, *see United States v. Elder et al.*, JKB-18-0408, ECF 186, is automatically excludable under 18 U.S.C. § 3161(h)(1)(B).

### 2.  March 13, 2020 to March 27, 2020

According to the government, "[t]he period from March 13, 2020 through March 27, 2020 is automatically excluded . . . because it was a 'delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.'"  ECF 72 at 23 (quoting 18 U.S.C. § 3161(h)(1)(D)).

On March 13, 2020, defendant filed a "Request for Detention Hearing."  ECF 12 ("Request").  The Request stated, *id.*:

> 1.    On March 6, 2020, the defendant consented to an order of detention by agreement.

> 2.    The defendant's agreement to be detained was without prejudice to subsequently request a hearing to set appropriate conditions of release.

> 3.    The defendant avers that there are conditions which can be imposed upon the defendant which will reasonably assure the appearance of the defendant and will assure that the defendant will not endanger the safety of any other person or the community.

To be sure, defendant's submission on March 13, 2020 (ECF 12) was styled as a "Request for Detention Hearing," rather than a motion.  But, as the Supreme Court has remarked in a different context, "[l]aw reaches past formalism."  *Lee v. Weisman*, 505 U.S. 577, 595 (1992).  The name by which defendant labeled his submission does not alter its character.  By filing the "Request," defendant asked the Court to complete a certain action, namely, conduct a detention hearing.  ECF 12.  The Request was the functional equivalent of a motion.

As noted, Judge Copperthite conducted a detention hearing on March 27, 2020.  ECF 14; ECF 15.  In my view, it is appropriate to exclude the period between March 13, 2020 and March 27, 2020, as a "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  18 U.S.C. § 3161(h)(1)(D).

Therefore, I shall treat the period during which the Request was pending as a "delay resulting from a[] pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  18 U.S.C. § 3161(h)(1)(D).  For that reason, I conclude that the brief period during which the Request was pending is automatically excluded.

### 3.  March 14, 2020 to January 31, 2022[23]

The government suggests that the period between March 14, 2020, and January 31, 2022, is excludable under the ends-of-justice provision of the Act.  ECF 72 at 29–30.  I agree.

As noted, in response to the pandemic, Chief Judge Bredar issued Standing Order 2020-03 (*In re Standing Orders*, 1:00-mc-0308, ECF 93) on March 14, 2020.  The Standing Order postponed "all civil and criminal petit jury selections and jury trials scheduled to commence now through April 24, 2020 . . . pending further Order of the Court."  *Id.* at 1.  Standing Order 2020-03 also stated that "the time period of the continuances implemented by this Order will be excluded under the Speedy Trial Act," because "the Court specifically finds that the ends of justice served by ordering the continuances outweigh the best interests of the public and each defendant in a

---

[23] The government asserts that the period between March 16, 2020, and January 31, 2022, is subject to exclusion.  ECF 72 at 29–30.  However, Standing Order 2020-03 was issued on March 14, 2020.  *See In re Standing Orders*, 1:00-mc-0308, ECF 93.  Therefore, any such exclusion would actually date from March 14, 2020, not March 16, 2020.

speedy trial, pursuant to 18 U.S.C. § 3161(h)(7)(A)." *Id.* at 1–2. Subsequent Standing Orders extended the suspension of trials until August 1, 2020. *See In re Standing Orders*, 1:00-mc-0308, ECF 97; ECF 99; ECF 103. Each included an ends-of-justice finding. *See In re Standing Orders*, 1:00-mc-0308, ECF 97 at 2; ECF 99 at 2; ECF 103 at 2–3. As noted, there were some brief periods during which the District was able to conduct jury trials. Indeed, the Hobbs Act case was one of the cases that went to trial. But, because of the pandemic, the District did not fully resume trials until February of 2022. *See In re Standing Orders*, 1:00-mc-0308, ECF 120; ECF 123; ECF 142; ECF 145.

The government filed the First Consent Motion to Exclude on August 3, 2020. ECF 18. By Order of August 3, 2020 (ECF 19), I granted the First Consent Motion, and ordered a continuance until January 2, 2021. As noted, the Order of August 3, 2020, contained findings that, given the public health conditions associated with the COVID-19 pandemic, the ends of justice served by the continuance outweighed the defendant's and the public's interest in a speedy trial. *See id.*

The Second Consent Motion to Exclude followed on February 2, 2021. ECF 20. By Order of February 2, 2021 (ECF 21), I granted the Second Consent Motion and extended the continuance until April 23, 2021. The Order of February 2, 2021, also contained the requisite ends-of-justice findings. *See id.*

The government filed the Third Consent Motion to Exclude on June 14, 2021, again with defendant's consent. ECF 25. By Order of June 14, 2021 (ECF 26), I granted the Third Consent Motion and ordered "that any delay in the trial of the above case between from [sic] April 23, 2021 through October 15, 2021 shall be excluded pursuant to 18 U.S.C. §§ 3161(h)(1)(B), (h)(1)(D), and (h)(7)(A), for the reasons set forth . . . in the Government's motion [ECF 25], which are

incorporated herein."  I also found, "for the reasons stated in the Government's motion, which are incorporated herein, that any delay resulting from the continuance . . . is in the interest of justice and outweighs the interests of the public and the Defendant in a speedy trial."  *Id.*  I thereby adopted the government's assertion in the Third Consent Motion (ECF 25) that exclusion of the period between April 23, 2021, and October 15, 2021, was warranted by the ongoing "public-health risks and concerns" associated with the COVID-19 pandemic.  *Id.* ¶ 7.  And, I also agreed that exclusion was warranted by the pendency of defendant's Hobbs Act case, which had yet to proceed to sentencing.  *Id.* ¶ 8.

The government filed the Fourth Consent Motion to Exclude on January 6, 2022.  ECF 27. By Order of January 6, 2022 (ECF 28), I ordered "that any delay . . . from October 15, 2021 through January 31, 2022 shall be excluded," again "for the reasons set forth . . . in the Government's motion [ECF 27], which are incorporated herein."  By incorporating the reasons set forth in the Fourth Consent Motion to Exclude (ECF 27), I adopted the government's assertion in the Fourth Consent Motion that "continuation of the trial date is necessary due to public-health risks and concerns, especially in light of the surging numbers of recent COVID-19 infections in light of the Omicron variant."  *Id.* ¶ 7.  And, I agreed to the request in the Fourth Consent Motion for an exclusion on the following grounds, *id.* ¶ 8:

> [T]he Defendant was convicted of conspiracy to commit Hobbs Act Robbery in August 2020 and was sentenced on October 15, 2021 in Case No. JKB-18-408. The Defendant filed a Notice of Appeal to the United States Court of Appeals to [sic] the Fourth Circuit. Now that the Hobbs Act case has been resolved, the parties are in discussions concerning possible resolution of this case, including whether a motions hearing and trial schedule are necessary. To allow time for those discussions to conclude, the United States believes that the time up to January 31, 2022 should be excluded from the Speedy Trial Act.

In sum, based on the Standing Orders (*In re Standing Orders*, 1:00-mc-0308, ECF 93; ECF 97; ECF 99; ECF 103) entered by Chief Judge Bredar and the Orders of this Court (ECF 19; ECF

21; ECF 26; ECF 28), the Court has already "set[] forth, in the record of the case . . . [the] reasons for [the Court's] finding that the ends of justice served by the granting of [a] continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In particular, Chief Judge Bredar, speaking for the District Court, entered findings that the ends of justice were served by suspending jury trials from March 14, 2020, until August 1, 2020, and that the grounds for the suspension outweighed the interests of defendants and the public in a speedy trial. *In re Standing Orders*, 1:00-mc-0308, ECF 93 at 1–2; ECF 97 at 2; ECF 99 at 2; ECF 103 at 2–3; *see Pair*, 84 F.4th at 585 (countenancing that, with respect to the COVID-19 pandemic, a District Court "can make district-wide findings to continue criminal jury trials en masse and exclude the relevant time from each defendant's speedy trial clock"). In addition, I placed on the record my own determination that the pendency of defendant's Hobbs Act case, and the public health crisis associated with the COVID-19 pandemic, warranted an ends-of-justice exclusion of the period between March 14, 2020, and January 31, 2022. ECF 19; ECF 21; ECF 26; ECF 28.

Nevertheless, to the extent that such reasons are not clearly evident on the record, the Court hereby finds that the ends of justice warrant the exclusion of the period between March 14, 2020, and January 31, 2022, for three reasons.

First, exclusion of this period was necessary in light of the ongoing COVID-19 pandemic. As the Fourth Circuit has remarked, *Pair*, 84 F.4th at 585:

> In some cases, trial participants might also find themselves acting contrary to the cautions of their own physicians. The trial might have soon fallen into disarray. Jurors and witnesses could have been exposed to the virus and would need to be excused. The basic requirement of capturing a cross-section of the community for the jury would have been undermined, given that the pandemic hit some sections of the population harder than others. Mistrust would fester if jurors sensed one of their peers was coming down with an illness. Imagine, too, how a district judge would feel if someone were hospitalized (or worse) due to COVID-19 because of insufficient protection in the courtroom. These are but a handful of the difficulties that could have plagued an in-person trial [during the COVID-19 pandemic].

41

Second, the exclusion was necessary to allow the resolution of defendant's Hobbs Act case. The parties requested the delay in the firearm case because they regarded the outcome of the Hobbs Act case as material to their negotiations concerning the disposition of the firearm case.

Third, although not asserted by the government, at least some of this delay was necessary in connection with the appointment of new defense counsel and, thereafter, to permit newly-appointed defense counsel to educate himself about the case. Specifically, an attorney inquiry hearing was held on March 15, 2021, and it resulted in a change of counsel for defendant. ECF 22. Certainly, this change in counsel necessitated some delay. *See* 18 U.S.C. § 3161(h)(7)(B)(iv) (instructing a court to consider whether "failure to grant . . . a continuance . . . would deny the defendant reasonable time to obtain counsel . . . or would deny counsel for the defendant . . . reasonable time necessary for effective preparation").

### 4.  October 22, 2021 to February 21, 2023

The government requests, in part, "that the Court place findings on the record that the continuance while the appeals in the Hobbs Act Case were pending (October 22, 2021 through February 21, 2023) . . . served the ends of justice and outweighed the interest in a speedy trial." ECF 72 at 30.

As noted, by Order of January 6, 2022 (ECF 28), I excluded the period "from October 15, 2021 through January 31, 2022 . . . ."  By Order of August 4, 2022 (ECF 33), I approved the parties' "request that the Court continue to delay entering a scheduling order . . . for at least 60 days."  Then, by Order of October 4, 2022 (ECF 35), I granted the parties' "request that the Court continue to delay entering a scheduling order in this case for at least 30 more days."  By Order of November 3, 2022 (ECF 37), I again granted the parties' "request that the Court continue to delay entering a scheduling order . . . for at least 30 more days."  And, by Order of July 24, 2023 (ECF

40), I granted the parties' "request that the Court continue to delay entering a scheduling order . . . for at least 45 more days to allow plea discussions to continue." *Id.* at 2.

I am mindful that more than 70 days elapsed between the last day of the period excluded by the Order of January 6, 2022 (ECF 28)—January 31, 2022—and the issuance of the Order of August 4, 2022.  ECF 33.  But, in my view, it would be misguided to construe the continuance granted by Order of January 6, 2022 (ECF 28) as having no significance beyond January 31, 2022.

I granted the Order of January 6, 2022, in response to the Fourth Consent Motion to Exclude Time.  ECF 27.  The Fourth Motion cited the ongoing pandemic and also explained that "the parties are in discussions concerning possible resolution of this case, including whether a motions hearing and trial schedule are necessary." *Id.* ¶ 8.  The delay until August 4, 2022, that followed the Order of January 6, 2022 (ECF 28), reflected the shared understanding of counsel and the Court that a continuance would remain in place for the reasons previously stated.

Indeed, to that end, and as noted, on January 11, 2022, Mr. Balter wrote an email to government's counsel, stating:  "Thx for taking the time to speak with me about this case today.  Confirming we discussed holding the pending firearms case in abeyance pending the disposition of the appeal of the Hobbs Act conspiracy appeal [sic]."  ECF 72-5.  This mutual understanding that the firearm case would be "held in abeyance" was also reflected in subsequent Status Reports.  ECF 34; ECF 36; ECF 39.  In each, the parties *jointly* asked the Court to "*continue to delay* entering a scheduling order."  (Emphasis added).  To hold that the continuance granted by the Order of January 6, 2022 (ECF 28) expired on January 31, 2022, would exalt form over substance.

In addition, as discussed, *supra*, I do not agree with defendant that the period between November 3, 2022, and July 24, 2023, was not subject to a continuance.  In particular, the Order of November 3, 2022 (ECF 37) provided that the Court would delay entering a scheduling order

43

for "*at least* 30 days," to allow resolution of the Hobbs Act case, which "might impact plea discussions." *Id.* (emphasis added). Defendant's contention that the continuance granted by this Order expired on December 2, 2022, is contrary to the letter of the Order, which specified that the Court would delay further action in the firearm case for "at least" 30 days—not "at most" 30 days. It is also contrary to the spirit of the Order and all others entered in this case, each of which reflected the parties' shared intent to hold the firearm case in abeyance pending resolution of the Hobbs Act case and subsequent plea negotiations.

In sum, I am satisfied that the Court's Orders of January 6, 2022 (ECF 28), August 4, 2022 (ECF 33), October 4, 2022 (ECF 35), November 3, 2022 (ECF 37), and July 24, 2023 (ECF 40) continued the trial from October 22, 2021, to February 21, 2023, for all the reasons stated.

I am also satisfied that the various orders reflect that the Court undertook the "mandatory balancing contemporaneously with the granting of the continuance[s]." *Pair*, 84 F.4th at 584 (citation and internal quotation marks omitted). The orders also placed on the record the Court's reasons for the continuances. For example, the orders generally identified the pendency of the Hobbs Act case, including defendant's appeal to the Fourth Circuit, as a reason for granting a continuance.[24]

Nonetheless, to avoid doubt, the Court now finds, pursuant to 18 U.S.C. § 3161(h)(7)(A), that the ends of justice served by the continuance between October 22, 2021 and February 21, 2023, outweighed the best interests of the public and defendant in a speedy trial. Among other reasons, the continuance was warranted because the outcome of the Hobbs Act case was material to the parties' negotiations concerning the disposition of the firearm case.

---

[24] The Court did not reference defendant's request for certiorari to the Supreme Court.

Indeed, the plea agreement that had been reached in this case supports the finding that the outcome of the appeal in the Hobbs Act case was crucial to the plea negotiations in the firearm case. The proposed plea agreement, provided to the Court in September 2023, prior to the aborted Rule 11 proceeding, contemplated a relatively short sentence in this case, *concurrent* with the sentence defendant is serving in the Hobbs Act case. Until defendant's conviction in the Hobbs Act case was upheld, however, that plea agreement could not have been fashioned.

### 5.   August 12, 2022 to October 4, 2023

The government asserts that the period between August 12, 2022, and October 4, 2023, should be excluded automatically as a "delay resulting from other proceedings concerning the defendant," because during this time Brooks "was seeking post-conviction relief from a conviction in the Circuit Court for Howard County." ECF 72 at 17–18; *see* ECF 40. According to the government, defendant filed his petition for post-conviction relief from the state court conviction on August 12, 2022. ECF 72 at 24 (citing ECF 72-8 at 8). The petition was denied on June 7, 2023. ECF 72 at 24 (citing ECF 72-8 at 9). And, on October 4, 2023, the Appellate Court of Maryland denied defendant's application for leave to appeal the denial of his petition for post-conviction relief. ECF 72 at 24 (citing ECF 72-9 at 1).

The parties brought the state post-conviction proceedings to the Court's attention in the Fourth Status Report, filed on July 24, 2023. ECF 39. The parties stated, *id.* at 1–2:

> The parties previously requested that the Court delay entering a scheduling order in this case because the outcome of the Defendant's appeals in the Hobbs Act case impacted the parties' plea discussions. In addition to the Hobbs Act case, in March 2023, the Defendant had a postconviction hearing in the Circuit Court for Howard County with respect to a prior criminal conviction. The Defendant's post-conviction motion was denied on June 7, 2023. This postconviction proceeding was also impacting the parties' plea discussions in this case.

> Now that the Hobbs Act case and the Howard County post-conviction litigation have concluded, the parties are reengaged in plea discussions. The parties respectfully

request that the Court continue to delay entering a scheduling order in this case for at least 45 more days to allow plea discussions to continue.

I granted the parties' request.  ECF 40.

In my view, the period during which defendant's post-conviction petition was pending in the Circuit Court for Howard County is subject to an ends-of-justice exclusion.  My understanding at the time I granted the parties' request (ECF 40) was—and it remains—that the outcome of the post-conviction proceeding was one of several uncertainties that defendant considered necessary to resolve before making an informed decision about how to proceed in the firearm case.  I delayed entering a scheduling order in order to allow defendant to make an informed decision.

Therefore, given the relevance of the State post-conviction proceeding to the parties' plea discussions in this case, I conclude that the ends of justice served by the continuance from August 12, 2022 to October 4, 2023, outweighed the interest of the defendant and the public in a speedy trial.  Because this period is subject to an ends-of-justice exclusion, I need not consider whether it is automatically excluded as a "delay resulting from other proceedings concerning the defendant" under 18 U.S.C. § 3161(h)(1).

### 6.  February 21, 2023 to September 21, 2023

The government asserts that the period between February 21, 2023, and September 21, 2023, is subject to an "ends-of-justice exclusion based on the parties' continued plea negotiations after the appeal in the Hobbs Act Case was concluded."  ECF 72 at 32.  I agree.  I note that the period between February 21, 2023 and September 21, 2023 falls within the period between August 12, 2022 and October 4, 2023, which I have already concluded is subject to an ends-of-justice exclusion.

By Order of November 3, 2022 (ECF 37), the Court agreed to "continue to delay entering a scheduling order in this case for *at least* 30 more days," to allow for resolution of the Hobbs Act

case, which "might impact plea discussions." (Emphasis added). In the Fourth Status Report (ECF 39), submitted on July 24, 2023, the government informed the Court that defendant's judgment of conviction in the Hobbs Act case became final on February 21, 2023. And, the government stated, *id.* at 1–2:

> Now that the Hobbs Act case and the Howard County post-conviction litigation have concluded, the parties are reengaged in plea discussions. The parties respectfully request that the Court continue to delay entering a scheduling order in this case for at least 45 more days to allow plea discussions to continue. The parties request to submit another joint status report to the Court by September 7, 2023.

Moreover, in the Fifth Status Report (ECF 41), submitted on September 7, 2023, the government wrote:

>  Since the filing of the July 24, 2023 status report, the parties have been engaged in productive plea discussions. The government is currently in the process of finalizing a proposed plea agreement, which it will present to counsel for the Defendant within the next few days.
>
> Given the parties' recent plea discussions, the parties anticipate that they will be able to reach an agreement to resolve this case without the need for a trial. Accordingly, the parties respectfully request to provide the Court with a further status report by September 22, 2023.

The Court approved the Fourth and Fifth Status Reports by Orders of July 24, 2023 (ECF 40) and September 8, 2023 (ECF 42), respectively. In my view, the Orders of November 3, 2022 (ECF 37), July 24, 2023 (ECF 40), and September 8, 2023 (ECF 42), properly continued the trial from February 21, 2023, until September 21, 2023.

The Court's approval of the Third, Fourth, and Fifth Status Reports, each of which jointly requested a continuance to allow for further plea discussions, suggests that the Court conducted the "mandatory balancing [necessary to the ends-of-justice inquiry] contemporaneously with the granting of the continuance." *Pair*, 84 F.4th at 584 (citation and internal quotation marks omitted). Moreover, the Court's Orders of November 3, 2022 (ECF 37), July 24, 2023 (ECF 40), and

September 8, 2023 (ECF 42), by incorporating the reasons for exclusion provided by the government in the Third, Fourth, and Fifth Status Reports, arguably "set forth the reasons for [the Court's] finding" that an exclusion was warranted under the ends-of-justice provision. *See Hart*, 91 F.4th at 740 n.4 ("Although a district court need not use any 'magic words,' our precedent . . . holds that a district court must itself make the finding and enter its reasons on the record, even if belatedly.").

Nonetheless, to avoid any doubt, I make explicit here my finding that the delay between February 21, 2023, and September 21, 2023, occasioned by the parties' plea discussions, served the ends of justice, and outweighed the interests of the defendant and the public in a speedy trial.

### 7.  September 21, 2023 to October 6, 2023

The government asserts that the period between September 21, 2023, and October 6, 2023, is subject to an "automatic exclusion based on the . . . the Court's consideration of the parties' proposed plea agreement."  ECF 72 at 32.  On September 21, 2023, the Court received, by email, a notice from the government that the parties had reached a plea agreement.  The government attached a copy of the plea agreement.  The email advised the Court that the plea agreement was made under Fed. R. Crim. P. 11(c)(1)(C), and that it "contemplate[d] a sentence of 30 months, concurrent to another federal sentence Mr. Brooks is currently serving in Case No. JKB-18-0408." Moreover, the Court was alerted to "one Guidelines issue" that the parties wanted the Court to resolve, concerning U.S.S.G. § 5G1.3(b).  The Court was also advised that the government consented to defendant's request to proceed directly to sentencing.

Defendant appeared before the Court for his guilty plea proceeding on October 6, 2023. ECF 48.  However, as indicated, he chose not to proceed with the guilty plea.  *See* ECF 57 at 3.

The period of delay between September 21, 2023, and October 6, 2023, can be classified as a "delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government."   18 U.S.C. § 3161(h)(1)(G). Therefore, this delay is automatically excluded.

### 8.   October 6, 2023 to December 8, 2023

The government asserts that the period between October 6, 2023, and December 8, 2023, is subject to an "ends-of-justice exclusion based on the Defendant's request to prepare and file pretrial motions."  ECF 72 at 32.

At defendant's aborted rearraignment proceeding on October 6, 2023, at which defendant indicated that he wished to proceed to trial, the Court stated:  "I'm going to do my best to give you a date as quickly as we can get one."  ECF 57 at 6.  Defendant's counsel responded by stating, *id.*:

> I believe that there are—motions have not been filed yet.  There are Fourth Amendment and statement issues that I would be filing motions on, so that we would need a date for working back from there; hopefully have a motion's [sic] hearing in advance of trial and obviously the time for the filing of motions as well.

The Court indicated that it would set a trial date that would accommodate defendant's request for adequate time to prepare and submit pretrial motions.  *Id.* at 7 ("I'm going to work backwards [from the date of trial] and give you a motion date that works with that.").  Thereafter, the Court set a motions deadline of December 8, 2023; a motions hearing; and a trial date of April 15, 2024.  ECF 49.

Section 3161(h)(7)(B)(iv) of the Speedy Trial Act directs the court to consider "[w]hether the failure to grant . . . a continuance . . . would deny counsel . . . the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."  And, in *Bloate*, 559 U.S. 196, the Supreme Court held that time granted to a party "to prepare . . . pretrial motions . . .

may be excluded . . . when a district court enters appropriate findings under subsection (h)(7)" of the Act.  *Id.* at 204.

Given the length of time that the case has been pending, seasoned defense counsel's failure to have filed any motions makes clear that the defense supported the continuances, consistent with the many requests jointly submitted to the Court.  Because of the unexpected change of heart by the defendant at his rearraignment, it is understandable that defense counsel needed time to submit motions.

The Court now makes explicit that, given the declared need of defendant's counsel for adequate time to prepare pretrial motions, the delay occasioned by setting December 8, 2023, as the deadline for the submission of defense motions served the ends of justice and outweighs the interest of the defendant and the public in a speedy trial.

### 9.   December 8, 2023 to Present

As noted, on December 8, 2023, defendant filed several pretrial motions.  ECF 50; ECF 51; ECF 52; ECF 53.  The government argues that time between the submission of these motions and the date of the Court's eventual disposition of the motions is automatically excluded under 18 U.S.C. § 3161(h)(1)(D).  ECF 72 at 26.  I agree.

Section 3161(h)(1)(D) of the Speedy Trial Act provides for the exclusion of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  I readily conclude that the period of delay between the submission of the defense motions on December 8, 2023, and their eventual disposition by the Court, is automatically excluded under 18 U.S.C. § 3161(h)(1)(D); *see also* § 3161(h)(1)(H).

### 10. October 6, 2023 to April 15, 2024

Finally, the government asserts that the time between October 6, 2023, the date on which defendant manifested his intent to proceed to trial, and April 15, 2024, the date on which trial is scheduled to begin, is subject to an "ends-of-justice exclusion based on the time needed for effective preparation for trial." ECF 72 at 33. Again, I agree.

As noted, 18 U.S.C. § 3161(h)(7)(B)(iv) directs a court to consider whether failure to grant a continuance "would deny counsel . . . the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." In my view, the Court's interest in allowing counsel "reasonable time necessary for effective preparation" justifies the period of delay between October 6, 2023, and April 15, 2024. In particular, the ends of justice served by allowing counsel adequate time to prepare and litigate pretrial motions, and thereafter to prepare for trial, outweigh the interests of the defendant and the public in a speedy trial.

*       *       *

In sum, for the foregoing reasons, all the time between defendant's Indictment on January 28, 2020 (ECF 30), and April 15, 2024, the date on which trial is scheduled to begin, is properly excluded under 18 U.S.C. § 3161(h)(1) or 18 U.S.C. § (h)(7)(A), or both. Therefore, defendant's statutory right to a speedy trial has not been violated.

As explained, defendant, through counsel, joined in all the requests for continuances. Nevertheless, I am mindful that the statute takes into account the public's independent interest in the speedy resolution of cases. *See* 18 U.S.C. § 3161(h)(7)(A). I am satisfied that the delay in this case, occasioned by the COVID-19 pandemic, the pendency of the Hobbs Act case, and the parties' efforts to reach a plea agreement, was not in derogation of the public's right to a speedy trial.

I am unaware of any authority providing that the public's interest in a speedy trial compels the Court to ignore the public's interest in facilitating resolution of a case by way of a plea agreement. The Supreme Court recognized long ago, in *Santobello v. New York*, 404 U.S. 257, 260 (1971):

> The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subject to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

It is also worth noting that citizens who are asked to serve as jurors, and witnesses who may be forced to revisit traumatic experiences, certainly have an interest in avoiding trials that could be resolved by a plea agreement. Furthermore, plea agreements reduce the burden on the Court's limited resources. Finally, it should go without saying that, in the context of the COVID-19 pandemic, this District Court and others have properly taken account of the ways in which the public's interest in a *speedy* trial must be tempered by the public's need for a *safe* trial.

In these respects, the various continuances in this case, the purpose of which was to resolve another case, to enable the parties to conduct fully informed plea discussions, and to facilitate the Court's trial of cases in a safe manner, were all in the interests of both the defendant and the public.

### D.

I next evaluate defendant's claim that his constitutional right to a speedy trial has been violated. For the reasons that follow, I conclude that defendant's constitutional right to a speedy trial was not violated.

As noted, "courts must balance [four factors] when determining whether a defendant's constitutional right to a speedy trial has been violated: the '[l]ength of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *Pair*, 84 F.4th at

588–89 (quoting *Barker*, 407 U.S. at 530) (alteration in *Pair*).  And, "[t]o prevail on a speedy trial

claim, a defendant must 'establish that on balance, [the] four separate factors weigh in his favor.'"

*Pair*, 84 F.4th at 589 (quoting *Hall*, 551 F.3d at 271) (alteration in *Hall*).

   In my view, the four *Barker* factors, on balance, do not weigh in defendant's favor.

Notwithstanding the unfortunate length of time that this case has been pending, there is absolutely

no basis on which to conclude that defendant's constitutional right to a speedy trial has been

violated.

   To be sure, the period of delay at issue—at this point, a bit more than four years—is

"presumptively prejudicial."  *Doggett*, 505 U.S. at 652 n.1; *see also Burgess*, 684 F.3d at 452;

*Woolfolk*, 399 F.3d at 598.  But, the remaining three *Barker* factors weigh very strongly in favor

of the government.

   With regard to the second *Barker* factor, I find that the "reason[s] for the delay," *Pair*, 84

F.4th at 589, were sound.  Clearly, "much of the interruption 'was attributable to the unpredictable

and unavoidable public health crisis presented by the COVID-19 pandemic.'"  *Id.* (quoting

*Vladimirov*, 2023 WL 2535263, at *5).  As the Fourth Circuit has observed, "a global pandemic

that has claimed for than half a million lives in this country" surely "falls within such unique

circumstances [that] permit a court to temporarily suspend jury trials in the interest of public

health."  *Pair*, 94 F.4th at 584–85 (internal quotation marks and citation omitted).  Therefore, this

Court is "in good company [in] find[ing] that [the pandemic] is a valid reason for delay."  *Id.* at

589 (citing *United States v. Walker*, 68 F.4th 1227, 1238 (9th Cir. 2023); *United States v. Marquez*,

No. 21-30134, 2022 WL 16849065, at *1 (9th Cir. Nov. 10, 2022); *United States v. Snyder*, 71

F.4th 555, 578 (7th Cir. 2023)).

Again, it is noteworthy that defendant joined in requesting the continuances. There were multiple reasons that were advanced, including the COVID-19 pandemic and the desire to delay the firearm case to allow the resolution of defendant's Hobbs Act case. *See Pair*, 84 F.4th at 590 (finding no constitutional speedy trial violation in part because "a significant portion of the delay was attributable to [defendant] himself").

Although defendant asked the Court to grant the extensions and continuances, he now complains because the Court granted his requests. Defendant's challenge appears disingenuous; it smacks of an effort to have it both ways, tantamount to an attempt to play the system. Moreover, the Court agrees with the government that the delay benefitted defendant insofar as it "allowed him to make a more informed decision"—namely, one accounting for the outcome of the Hobbs Act case—"regarding whether to enter a guilty plea in this case." ECF 72 at 34.

Other delays have been occasioned by the parties' plea negotiations, which resulted in a signed plea agreement. That defendant ultimately decided not to plead guilty does not alter the fact that, as the parties anticipated, he reached an agreement with the government and the Court was notified of the same. Moreover, defense counsel's resulting need to prepare pretrial motions and for trial itself was a consequence of the aborted guilty plea proceeding. In sum, I do not discern any impropriety in the reasons for the delay in this case.

"The third *Barker* factor is 'the timeliness and vigor of the assertion of the speedy trial guarantee.'" *Id.* (quoting *Hall*, 551 F.3d at 271). The assertion of the right is woefully deficient. To the contrary, defendant repeatedly joined in the parties' many requests for a continuance. And, when the Court offered on October 6, 2023, "to do [its] best" to set a trial as quickly as possible, Defendant's counsel responded by requesting additional time to prepare pretrial motions. ECF 57 at 6. Defense counsel stated, in particular, *id.*: "There are Fourth Amendment and statement issues

that I would be filing motions on . . . ." *Id.*  But, counsel did not state that he intended to file a motion pertaining to defendant's speedy trial rights.  *See id.*

Indeed, only on December 8, 2023—nearly four years after defendant was indicted—did defendant assert his right to a speedy trial.  ECF 50.  Defendant's lack of "timeliness and vigor" in asserting his speedy trial right weighs heavily against his claim that his constitutional right to a speedy trial was violated.  *Pair*, 84 F.4th at 590 (citation and internal quotation marks omitted).

Exclusive of the COVID-19 days, the record reflects that at every turn, defendant joined in or consented to a continuance to serve his own purposes.  On the facts here, by asserting a speedy trial violation, defendant seems to suggest that a court should not take counsel or a defendant at his word.  Defendant cannot disavow the requests he made by complaining that he got what he requested.

With respect to the fourth *Barker* factor, prejudice, defendant claims that he suffered "oppressive pretrial incarceration" and "anxiety and concern as a result of the pending charge." ECF 50 at 4.  The government observes that defendant "was not in custody because of this case— he was in primary custody in the Hobbs Act Case."  ECF 72 at 35.

As stated, defendant was indicted in the Hobbs Act case, JKB-18-0408, on August 14, 2019.  *Id.*, ECF 30.  He was arrested in that case on September 12, 2019.  *Id.*, ECF 49.  Also on that date, Judge Copperthite entered an Order of Detention as to defendant.  *Id.*, ECF 48.  After a detention hearing held on March 27, 2020, Judge Copperthite issued a further Order of Detention. *Id.*, ECF 85.  Defendant was convicted in the Hobbs Act case on August 31, 2020.  *Id.*, ECF 136. Then, on October 15, 2021, in the Hobbs Act case, Judge Bredar sentenced defendant to a term of 124 months of imprisonment.  *Id.*, ECF 186.  Therefore, to the extent that defendant has experienced oppressive incarceration over the last four years, it is attributable to the Hobbs Act

case.  Moreover, defendant's "generalized claims of anxiety [and concern] are insufficient to establish prejudice." *Ballard*, 727 F. App'x at 761.

Defendant complains that, despite his sentence in the Hobbs Act case, he has not been designated to a Bureau of Prisons facility because of the pendency of this case, and instead has been held in pretrial status.  This concern was raised for the first time at the hearing on March 8, 2024.  The Court was not provided with any information to verify the assertion, or to assess the significance of it.

Having balanced the four *Barker* factors, I readily conclude that defendant's constitutional right to a speedy trial was not violated.

### IV.    Conclusion

For the foregoing reasons, I shall deny the Motion (ECF 50).  An Order follows, consistent with this Memorandum Opinion.


Date: March 19, 2024                                    _____/s/_____

                                                       Ellen Lipton Hollander
                                                       United States District Judge

56